IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| HENRY RAY CAMPBELL, | : | |
| Plaintiff, | : | |
| | : | |
| V. | : | |
| | : | No. 5:14-CV-195 (CAR) |
| ADVANCE CORE CONSULTING, | : | |
| INC., | : | |
| Defendant. | : | |
| | : | |

## ORDER ON MOTION FOR SUMMARY JUDGMENT

Before the Court is Defendant Advance Core Consulting, Inc.'s Motion for

Summary Judgment [Doc. 14].  Plaintiff Henry Ray Campbell contends Defendant did

not rehire him in retaliation for filing an EEOC complaint for age and sex

discrimination, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42

U.S.C. § 2000e, et seq. ("Title VII").  After fully considering the matter, the Court finds

Defendant is entitled to judgment as a matter of law, and its Motion for Summary

Judgment [Doc. 14] is hereby **GRANTED**.

## STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must

be granted "if the movant shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law."[1]  A genuine issue of material fact only exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[2]  Thus, summary judgment must be granted if there is insufficient evidence for a reasonable jury to return a verdict for the nonmoving party or, in other words, if reasonable minds could not differ as to the verdict.[3]  When ruling on a motion for summary judgment, the Court must view the facts in the light most favorable to the party opposing the motion.[4]

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" and that entitle it to a judgment as a matter of law.[5]  If the moving party discharges this burden, the burden then shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact.[6]  This evidence must consist of more than mere conclusory allegations or legal conclusions.[7]

---

[1] Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).
[2] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).
[3] *See id.* at 249-52.
[4] *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992).
[5] *Celotex Corp.*, 477 U.S. at 323 (internal quotation marks omitted).
[6] *See* Fed. R. Civ. P. 56(e); *see also Celotex Corp.*, 477 U.S. at 324-26.
[7] *See Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991).

As a *pro se* litigant, Plaintiff is held "to a less stringent standard than formal pleadings drafted by lawyers."[8]  Nevertheless, Plaintiff's *pro se* status "does not exempt him from compliance with relevant rules of procedural and substantive law," including those applicable on summary judgment.[9]

## BACKGROUND

Defendant is the main contractor for the Department of Defense [DoD] Air Traffic Control Radar Beacon Systems, Identification Friend or Foe, Mark XII, Systems ("AIMS").[10] Plaintiff was a former program manager for AIMS, until he retired. As a program manager, Plaintiff was responsible for managing "the architecture of a multitude of weapons systems to ensure it met certain specifications, qualifications, and certifications."[11] Dave Domingue, Defendant's owner and president, approached Plaintiff about subcontracting with AIMS through Defendant. Defendant provided an Advisory and Assistance Services ("A&AS") contract to AIMS, and in 2006, Plaintiff began subcontracting through Defendant to provide support as a program manager to AIMS at the AIMS office on Warner Robins Air Force Base.[12]

After Plaintiff began subcontracting through Defendant with AIMS, Paul Washlesky became the government program manager for AIMS, Defendant's

---

[8] *Haines v. Kerner*, 404 U.S. 519, 520 (1972).
[9] *Hillemann v. Univ. of Cent. Fla.*, 411 F. Supp. 2d 1354, 1358-59 (M.D. Fla. 2004), *aff'd* 167 F. App'x 747 (11th Cir. 2006) (internal quotation omitted).
[10] Pl's Dep., [Doc. 18] at 14, 25.
[11] Def. SOF, [Doc. 16] at 1.
[12] *Id*. at 2; Pl's Dep., [Doc. 18] at 26.

customer.[13]  In January 2012, Washlesky told Domingue there were funding issues with the AIMS contracts and funding was ultimately reduced.[14] As a result of the funding shortage, Washlesky and Domingue discussed ways to save funds. They issued stop work orders on the subcontractors, including Plaintiff. Defendant said the contract Plaintiff was subcontracting under had reached its funding ceiling.[15] Domingue told Plaintiff that he had to end Plaintiff's subcontractor relationship with AIMS, but he wanted to bring Plaintiff on as an employee, albeit with decreased salary. [16]  Thus, on February 1, 2012, Plaintiff began working as an employee for Defendant; his responsibilities did not change.[17]

On February 24, 2012, Plaintiff sent an email to Domingue requesting that he return to his subcontractor status. Defendant never responded to the email. Prior to receiving Plaintiff's email, Domingue had been informed there was even less funding then he originally thought, and Defendant was going to have to make additional cutbacks.[18] Because of the funding shortage, Plaintiff was terminated on February 27, 2012.[19]

In April 2012, AIMS informed Domingue additional funding was available, and

---

[13] Domingue Dec., [Doc. 22] at 1.
[14] *Id*.
[15] Def. SOF, [Doc. 16] at 3.
[16] *Id*. at 2.
[17] *Id*. at 4.
[18] Campbell Dec., [Doc. 24-5] at 25; Domingue Dec., [Doc. 22] at 1.
[19] Pl. Dep.,[Doc. 18] at 178.

Defendant could now support another program manager.   However, Washlesky, Defendant's customer, expressed concerns about bringing Plaintiff back as a program manager due to communication issues he previously had with Plaintiff.[20]   While working with Defendant, it became obvious to Domingue and others that there was a "communication problem" between Plaintiff and Washlesky.[21]   John Seeriter, AIMS chief engineer and team leader, talked to Plaintiff at least twice about the need to work out his relationship with Washlesky. A few days before being terminated, Plaintiff sent an email to Washlesky and April Griner, the on-site contractor representative, responding to questions Washlesky asked. Washlesky disliked Plaintiff's tone in the email, and asked Griner to forward the email to Domingue.[22]

A month after Plaintiff's termination, Plaintiff sent an email to one of Defendant's customers, stating that he had been "terminated in favor of personnel with no experience."[23] The customer forwarded the email to Domingue, who thought the email was inappropriate.[24]   That same month, Plaintiff sent an email to Griner calling her a "glorified secretary," which she told Domingue "greatly upset" her.[25]

Despite his termination, Plaintiff continued to send invoices to Defendant for

---

[20] Domingue Dec., [Doc. 22] at 2.
[21] Pl's SOF, [Doc. 24-2] at 3-4; Domingue Dec., [Doc. 22] at 2.
[22] Pl. Dep.,[Doc. 18] at 176.
[23] *Id*. at 179.
[24] Domingue Dec., [Doc. 22] at 3.
[25] Griner Dec., [Doc. 21] at 2.

work he said he was performing as a subcontractor.[26] Plaintiff believed his subcontractor status was not terminated, even though Domingue states he told him it was terminated, Domingue hired him as an employee, and Domingue later terminated him.[27]  According, to Domingue Plaintiff was not authorized to perform the work and did not pay the invoices Plaintiff sent to him.[28] On April 16, 2012, Domingue communicated to Plaintiff that the contract he was subcontracted under had "exceeded its ceiling" and his "acceptance of a position" as an employee with Defendant was "a testament to that."[29] Even after this email exchange with Defendant, Plaintiff requested to attend an industry AIMS Conference.  Domingue responded on April 26th that he did not "know how much clearer" he had to make it, but Plaintiff no longer represented AIMS through Defendant as a contractor or employee.[30]  He asked Plaintiff to "please stop harassing ACC employees, AIMS personnel, and AIMS customers" and told him "we hope you'll be able to move on and enjoy life without the AIMS Program."[31]

Defendant states that Washlesky approached Domingue in mid-April and suggested that James Bamburg would be a good fit for the position created by the additional funding.[32]  Both Washlesky and Seeriter recommended Bamburg. Defendant,

---

[26] Pl. SOF, [Doc. 24-2] at 8.
[27] Pl's Dep., [Doc. 18] at 56, 57; Domingue Dec., [Doc. 22] at 2.
[28] Domingue Dec. [Doc. 22] at 3.
[29] Pl. Dep.,[Doc. 18] at 185-86.
[30] *Id*. at 190.
[31] *Id*. at 191.
[32] Domingue Dec., [Doc. 22] at 3.

through Griner, began to communicate with Bamburg in April about interviewing him for the position.[33] Defendant says it interviewed Bamburg at the industry AIMS Conference between April 30–May 4, and decided to hire him, effective after Bamburg's retirement from the Army. Bamburg could not legally accept a position with Plaintiff until July 11, 2012 after he retired.[34] Defendant gave Bamburg an official offer of employment on July 16, 2012.[35]

Plaintiff filed his first EEOC charge on May 7, 2012, alleging his termination was based on age and sex discrimination.[36] Defendant received notice of Plaintiff's EEOC charge after May 9, 2012.[37] However, when Plaintiff realized that Bamburg was hired, and he was not rehired, he filed another claim with the EEOC on December 25, 2012, alleging retaliation for filing the first EEOC charge. Plaintiff received a right to sue letter on his retaliation charge, and timely filed the instant suit against Defendant on May 16, 2014.[38]

---

[33] Griner Dec., [Doc. 21] at 7.

[34] Campbell Dec., [Doc. 24-5] at 15.

[35] *Id*. at 17.

[36] Plaintiff filed four EEOC charges, an OFCCP complaint, and a demand letter alleging defamation. Although Plaintiff received a right to sue letter on his discrimination charge, he did not file suit.

[37] Pl's Dep. Ex. 22, [Doc. 18] at 225; Domingue Dec., [Doc. 22] at 14.

[38] This lawsuit is based exclusively off of Plaintiff's EEOC charge 03831, alleging retaliation for filing an EEOC charge. *See infra* note 49.

## DISCUSSION

To establish a claim of retaliation under Title VII, a plaintiff must prove that (1) he engaged in statutorily protected activity, (2) he suffered a materially adverse action, and (3) there is a causal relation between the two events.[39] Moreover, it is up to the employee to prove that "the desire to retaliate was the but-for cause of the challenged employment action."[40]

Where, as here, a plaintiff uses circumstantial evidence to prove retaliation under Title VII, we apply the burden-shifting approach articulated in *McDonnell Douglas Corp. v. Green.*[41] Under this approach, a plaintiff must first make a *prima facie* case of retaliation.[42] If the plaintiff does so, the employer then must articulate a legitimate, non-retaliatory reason for the challenged employment action as an affirmative defense to liability.[43] The plaintiff bears the ultimate burden of proving retaliation by a preponderance of the evidence and that the reason provided by the employer is a pretext for prohibited retaliatory conduct.[44]

---

[39] *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008).

[40] *Booth v. Pasco Cnty., Fla.*, 757 F.3d 1198, 1207 (11th Cir. 2014) (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, —U.S.—, 133 S. Ct. 2517, 2528, 186 L.Ed.2d 503 (2013)).

[41] 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973). *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1181 (11th Cir. 2010).

[42] *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802. (1973).

[43] *Goldsmith,* 513 F.3d at 1277.

[44] *Id.*

## I.     Prima Facie

Defendant concedes Plaintiff satisfies the first two elements of his prima facie case, but argues he cannot establish the third element, a causal connection. To establish a causal connection, the plaintiff must show the decision maker was aware of the protected conduct, and the protected activity and adverse action were not wholly unrelated.[45] A plaintiff may show causation between the protected expression and the adverse action if they are in "close temporal proximity."[46] However, where a plaintiff relies solely on temporal proximity it must be "very close."[47] Additionally, "in a retaliation case, when an employer contemplates an adverse employment action before an employee engages in protected activity, temporal proximity between the protected activity and the subsequent adverse employment action does not suffice to show causation."[48]

Defendant argues Plaintiff cannot demonstrate a causal connection because it contemplated and decided not to rehire Plaintiff prior to receiving notice of Plaintiff's

---

[45] *Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1211 (11th Cir. 2013).

[46] *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004). We note that the Eleventh Circuit has only opined in unpublished opinions, but has not made a definitive ruling, on whether temporal proximity post-*Nassar* is enough to satisfy but-for causation. *See Schmidt v. City of Atlanta*, 558 F. App'x 953, 955 (11th Cir. 2014); *Butterworth v. Lab. Corp. of Am. Holdings*, 581 F. App'x 813, 816 (11th Cir. 2014); *Jackson v. United Parcel Serv., Inc.*, 593 F. App'x 871, 877 (11th Cir. 2014); *Rives v. Lahood*, 2015 WL 1320586, at *3 (11th Cir. Mar. 25, 2015); *Baroudi v. Sec'y, U.S. Dep't of Veterans Affairs*, 2015 WL 1475586, at *3 (11th Cir. Apr. 2, 2015).

[47] *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1363 (11th Cir. 2007).

[48] *Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006).

EEOC complaint.[49] Moreover, Washlesky, Defendant's customer, requested Plaintiff not be rehired due to issues Plaintiff had with Washlesky prior to being terminated. Finally, upon Washlesky's recommendation to consider Bamburg, and after interviewing him, Defendant decided to offer Bamburg the position at the AIMS Conference (April 30–May 4)—over a week before becoming aware of Plaintiff's EEOC complaint.

Plaintiff claims genuine issues of fact exist as to whether Defendant was aware of Plaintiff's EEOC complaint before Bamburg's hiring date. First, Plaintiff claims there is no evidence, except for Domingue's assertions, that Defendant decided not to rehire him before hiring Bamburg. Second, Plaintiff argues a reasonable jury could find Defendant did not actually decide to hire Bamburg until July 16th, i.e., after receiving Plaintiff's EEOC Complaint, because Bamburg could not legally accept employment from Defendant until July 11th and was not extended a formal offer till July 16th. Thus, Plaintiff argues the jury could infer causation based on temporal proximity between

---

[49] Plaintiff in his Complaint asserted that the adverse employment action and protected activity were Defendant's failure to rehire him after filing his EEOC charge. Now, Plaintiff in his Response attempts to bring up additional protected activities and adverse employment actions. *See* Pl's. Resp. Br., Doc. 24-1 at 11-12. However, these were not included in the EEOC charge at issue here, and as the Eleventh Circuit has noted, a plaintiff's civil complaint remains "limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Green v. Elixir Indus., Inc.*, 152 F. App'x 838, 840 (11th Cir. 2005) (quoting *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1280 (11th Cir. 2004)). Moreover, even though the Court construes a *pro se* plaintiff's case liberally, "plaintiffs may not 'raise new claims at the summary judgment stage,'" and may not amend their complaint in a brief opposing summary judgment. *White v. Beltram Edge Tool Supply, Inc.*, 789 F.3d 1188, 1200 (11th Cir. 2015) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314 (11th Cir. 2004) (*per curiam*)). Therefore, the Court limits its discussion to the claims brought in Plaintiff's Complaint.

Plaintiff's protected activity and Bamburg's hiring date, which was over two months. The Court is unconvinced.

Plaintiff offers no evidence to contradict Defendant's assertion that Washlesky told Domingue he did not want Plaintiff to return and offered Bamburg as an alternative choice. Moreover, it is undisputed that Defendant began to communicate with Bamburg in early April, and interviewed Bamburg for the position at the AIMS Conference that took place between April 30-May 4. That Defendant did not hire Bamburg until July 16th, does not contradict Defendant's assertion it had already contemplated not rehiring Plaintiff and decided to extend an offer to Bamburg before becoming aware of Plaintiff's EEOC complaint. Moreover, temporal proximity of over two months is not sufficiently close to satisfy causation in this case.[50] Finally, even if Plaintiff could make out a *prima facie* claim based on temporal proximity, he cannot establish his alleged protected activity was the "but-for" cause of Defendant's alleged unlawful retaliation.

---

[50] *Thomas*, 506 F.3d at 1364 (finding a "three (3) month period, without more, does not rise to the level of 'very close'"; *see also Higdon*, 393 F.3d 1211, 1221 (11th Cir. 2004) ("By itself, the three month period ... does not allow a reasonable inference of a causal relation between the protected expression and the adverse action.*");  *Williams v. Waste Mgmt., Inc.*, 411 F. App'x 226, 229-30 (11th Cir. 2011) (finding a "two-month gap may be closer' in time, but it is not 'very close'"). *Farley v. Nationwide Mutual Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999) (concluding that a causal nexus was established based on the supervisors' knowledge of an EEOC charge and the employee's termination seven weeks later).

## II.    Legitimate Nondiscriminatory Reason

An "employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a [retaliatory] reason."[51] Defendant gives various reasons for not rehiring Plaintiff after he was terminated: (1) Plaintiff sent what the Defendant considered to be harassing emails to Defendant, customers, and employees; (2) Washlesky complained to Defendant about Plaintiff's past performance, specifically communications issues; and (3) Washlesky requested Defendant not rehire Plaintiff and instead to consider hiring Bamburg.[52] Because these reasons are legitimate and non-retaliatory, to sustain his claim, Plaintiff must show these reasons are merely pretext for retaliation.

## III.    Pretext

In order to establish pretext, Plaintiff must demonstrate that Defendant's proffered reasons were not the real reasons for the employment decision.[53] In other words, Plaintiff must "cast sufficient doubt on the defendant's proffered [nonretaliatory] reasons to permit a reasonable factfinder to conclude that the employer's proffered legitimate reasons were not what actually motivated its conduct."[54] Plaintiff may do so "either directly by persuading the court that a retaliatory reason more likely motivated the employer or indirectly by showing that the employer's

---

[51] *Nix v. WLCY Radio/Rahall Commc'ns,* 738 F.2d 1181, 1187 (11th Cir. 1984).
[52] Def. MSJ Br., [Doc. 15] at 11.
[53] *Jackson v. Ala. State Tenure Comm'n,* 405 F.3d 1276, 1289 (11th Cir. 2005).
[54] *Combs v. Plantation Patterns,* 106 F.3d 1519, 1538 (11th Cir. 1997) (citations omitted).

proffered explanation is unworthy of credence."[55] In the latter approach, Plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence."[56] Plaintiff cannot meet this burden.

Plaintiff contends that but for his EEOC complaint, he would have been rehired. Plaintiff relies on temporal proximity and Defendant's allegedly shifting reasons to raise an inference of retaliation. Because Plaintiff's temporal proximity argument fails for the same reasons as stated above,[57] the Court will only address Plaintiff's claim that Defendant's reasons for not rehiring him are unworthy of credence because they have changed or shifted.

Pretext may "be established by proof of inconsistent statements or shifting explanations for the adverse employment decision, suggesting that the articulated reasons are recently fabricated or false."[58] Here, Plaintiff contends Defendant only developed reasons for not rehiring him after he filed his EEOC complaint. He asserts

---

[55] *Id.*

[56] *Jackson*, 405 F.3d at 1289; *Silvera v. Orange County Sch. Bd.*, 244 F.3d 1253, 1258 (11th Cir. 2001).

[57] Moreover, the Eleventh Circuit has noted that close temporal proximity without more, may not be sufficient to establish pretext. *See Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1298 (11th Cir. 2006) ("The close temporal proximity between [plaintiff's] request for leave and his termination—no more than two weeks, under the broadest reading of the facts—is evidence of pretext, though probably insufficient to establish pretext by itself); *see also Wascura v. City of South Miami*, 257 F.3d 1238, 1244–45 (11th Cir. 2001) (holding that three and one-half month period between employee's protected activity and her termination was, standing alone, insufficient to establish pretext).

[58] *Walker v. St. Joseph's/Candler Health Sys., Inc.*, 506 F. App'x 886, 889 (11th Cir. 2013)

that when Defendant originally responded to his EEOC complaint, it did not list any claims of unprofessional behavior or a request from the customer that Plaintiff not be rehired, and only later "fabricated" these reasons.[59]  Moreover, Plaintiff contends Defendant's reasons changed in its second response to the EEOC, and again in its Motion for Summary Judgment.

      The Court finds none of Defendant's proffered reasons shifted or are inconsistent with each other. Clarifying or adding to legitimate non-discriminatory reasons during the process of litigation does not necessarily mean a defendant's reasons have shifted or are inconsistent.[60] Contrary to Plaintiff's contention, Defendant did, in fact, state in its first response to Plaintiff's EEOC complaint that its reasons for not rehiring Plaintiff included "complaints" received by the customer about Plaintiff's "performance," including, among other things, his "inadequate communications."[61] Additionally, Defendant asserted that along with Plaintiff's "performance deficiencies," Washlesky, Defendant's customer, recommended Bamburg as an alternative to rehiring Plaintiff.[62] Therefore, Defendant did not *change* its reasons between its first response and second response; it merely identified more specific "examples" of what it believed to be

---

[59] Pl.'s Resp. Br., [Doc. 24-1] at 15.
[60] *See Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1377 (11th Cir. 1996) (holding that plaintiff failed to show pretext when the employer's later statements merely offered more detail regarding perceived performance problems).
[61] [Doc. 24-6] at 35.
[62] Domingue Dec., [Doc. 22] at 3; Domingue Dep., [Doc. 20] at 49, 50, 53, 55.

Plaintiff's "deficient performance."[63] Moreover, in its Motion, Defendant did not change any reason for not rehiring Plaintiff, it merely added further justification that Plaintiff had sent emails which Defendant considered to be harassing. Finally, Plaintiff's argument that Defendant "fabricated" its reasons for not rehiring him because it did not articulate those reasons until it was required to do so in its response to the EEOC is simply unpersuasive. Thus, Plaintiff has not demonstrated inconsistencies, incoherencies, or contradictions in the Defendant's proffered legitimate reasons for its actions, from which a reasonable factfinder could not find them unworthy of credence.[64]

Finally, Plaintiff contends Defendant's reasons are simply false. In particular, he asserts the emails he sent after his termination were not harassing; his performance was not deficient; the communication issues he had with Washlesky did not amount to performance issues, and he disputes that Washlesky, as Defendant's customer, complained to Defendant about him.  However, in making these claims he relies on his own conclusory assertions.[65] Unfortunately, such assertions are not sufficient to establish pretext.[66]  Moreover, the Eleventh Circuit has made clear that what a plaintiff

---

[63] *See* [Doc. 24-6] at 29.

[64] *Jackson*, 405 F.3d at 1289; *Silvera v. Orange County Sch. Bd.*, 244 F.3d 1253, 1258 (11th Cir. 2001).

[65] *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) ("A plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute his business judgment for that of the employer.").

[66] *See Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996) (stating conclusory allegations of retaliation, without more, are not sufficient to carry a plaintiff's burden);

believes is simply irrelevant; "the inquiry into pretext centers upon the employer's beliefs, and not the employee's own perceptions of his performance."[67] Defendant believed Plaintiff's emails were harassing and told Plaintiff to stop sending the emails. Plaintiff cannot rebut Defendant's reasons by simply asserting his belief that the "negative tension" between he and Washlesky did not affect his performance, especially given Plaintiff admits he and Washlesky had a "communication problem" and was told on several occasions to work on his relationship with Washlesky.[68] Plaintiff has simply failed to "rebut head on" each of Defendant's legitimate non-retaliatory reasons as pretextual, and the Court finds that no reasonable factfinder could conclude that Plaintiff would have been rehired if he had not filed his EEOC complaint.[69] Therefore, he has failed to prove but-for causation.[70] Accordingly, Plaintiff has failed to establish his claim of retaliation, and Defendant is entitled to judgment as a matter of law.

---

*Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1092 (11th Cir. 2004) (finding a plaintiff's "self-serving assertion that she was not insubordinate" is not sufficient where a plaintiff has not shown that a defendant's employment decisions "were in fact motivated by [retaliation]")

[67] *Holifield v. Reno*, 115 F.3d 1555, 1565 (11th Cir. 1997)

[68] *See* Pl. Resp. Br., [Doc. 24-1] at 3. *See Brooks v. County Comm'n of Jefferson County, Ala.*, 446 F.3d 1160, 1162 (11th Cir. 2006*)* ("A mere scintilla of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." (quotations omitted)).

[69] *Smith v. City of New Smyrna Beach*, 588 F. App'x 965, 981 (11th Cir. 2014).

[70] *See Nassar*, 133 S.Ct. at 2525 ("It is ... textbook tort law that an action is not regarded as a cause of an event if the particular event would have occurred without it."); *see also Burrage v. United States*, 134 S. Ct. 881, 888 (2014) (discussing *Nassar's* but-for test, and explaining that but-for causation can be shown when two or more factors combine only "so long as the other factors alone would not have done so").

**CONCLUSION**

For the reasons set forth above, Defendant's Motion for Summary Judgment

[Doc. 14] is **GRANTED**.

     **SO ORDERED,** this 28th day of March, 2016.

S/ C. Ashley Royal
C. ASHLEY ROYAL, JUDGE
UNITED STATES DISTRICT COURT
